1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    PAUL SALAS, Sr.,

11                   Petitioner,                        No. CIV S-04-2550 GEB CMK P

12          vs.

13    DAVID RUNNELS, Warden, et al.,

14                   Respondents.                FINDINGS AND RECOMMENDATIONS

15    _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2001 conviction  for

18    possession of methamphetamine and possession of a firearm as a felon and subsequent sentence

19    of an aggregate term of fifteen years in prison.

20    **I.      Background**[1]

21              On October 31, 1999, a bail bondsman called Sacramento City Police for

22    assistance in detaining petitioner, who was a fugitive with an arrest warrant.  Four officers were

23    dispatched to the apartment on W street into which petitioner had fled.  When the officers

24    arrived, the bail bondsman informed them that he had chased petitioner into the apartment and

25    ────────────────

26        [1]For a more detailed discussion of the facts see the July 9, 2003 opinion of the California
      Court of Appeal for the Third Appellate District in People v. Salas, C039240, which is included
      in the lodged documents filed by respondents.  The facts from the Court of Appeal's opinion are
      presumed correct.  28 U.S.C. § 2254(d)(2), (e)(1).

1   that he had seen a bulge in petitioner's waistband and believed that petitioner was armed.   The

2   officers confirmed that there was a warrant for petitioner's arrest from Yolo County.   The

3   bondsman told officers that he believed that a car parked outside the apartment belonged to

4   petitioner; however, officers determined that the car did not belong to petitioner.

5          Officers knocked on the door of the apartment, but received no answer.   They

6   called the apartment's phone number and spoke with petitioner.   After a several minutes of

7   conversation, petitioner agreed to come to the door.   When petitioner opened the door, he was

8   handcuffed and taken out of the apartment.   Three of the officers then made a protective sweep

9   of the apartment for their safety.   The officers believed that petitioner had been armed, and

10   wanted to ensure that no one would shoot them and that everyone in the apartment was safe.   The

11   officers swept the apartment together, guns drawn, looking in every place that a person could

12   hide—under beds, in closets, and in crawl spaces.   The officers were also looking for anything in

13   plain view which would indicate criminal activity by petitioner.

14          The officers swept every room, except for one that was locked from the inside.

15   The officers knocked on the door, announced themselves as police officers, and demanded the

16   door be opened.   The officers got no response.   A woman eventually opened the door and

17   identified herself as Rene Esquibel. The officers swept the room and ran a warrant check on the

18   woman because her hiding in the bedroom was suspicious.   The warrant check revealed a person

19   with a different birthdate, indicating that "Esquibel" was lying.   After half an hour the woman

20   admitted that she was really Pamela Duffy; a warrant check on Ms. Duffy revealed there was a

21   warrant for her arrest and that she was on searchable probation.   The officers learned that Duffy

22   and petitioner had been living in the apartment together for about six months.

23          After learning that Duffy was on searchable probation and that she lived in the

24   apartment, the officers searched the apartment.   Officers found, in various drawers in the

25   bedroom that Duffy and petitioner shared, a loaded .22-caliber pistol, several packages of

26   ///

methamphetamine, syringes, baggies, scales and spoons with crushed matter on them.  A loaded
.25-caliber pistol was found in a shoebox in the bedroom's closet.

The trial court ruled that the officers properly conducted the protective sweep of
the apartment based on <u>Maryland v. Buie</u> 494 U.S. 325 (1990) and that the search of the
bedroom was lawful based on Duffy's probation search clause.  The trial court stated that
<u>Buie</u> allowed a sweep if officers "have a reason to believe that someone else may be present
[who poses] a danger."  The trial court explained, "[b]ehind that locked door, no one knew what
was there.  It might have been no one behind the door, it might have been 30 people, all armed.
There was no way to tell until the door was opened...."

## II.    Standards for Granting Habeas Relief

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death
Penalty Act (AEDPA) of 1996.  AEDPA applies to all petitioners filed after this date.  As this
petition was filed on December1, 2004, review of the petition is governed by the standards set
forth in AEDPA.[2]

Pursuant to AEDPA, an application for a writ of habeas corpus by a person in
custody under a judgment of a state court can be granted only for violations of the Constitution or
laws of the United States. <u>See</u> 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not
available for any claim decided on the merits in state court proceedings unless the state court's
adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the Supreme Court
> of the United States; or

---

[2]The court notes that petitioner argues in his traverse that AEDPA does not apply here
because this case "was filed prior to the 1-year period of limitation...."  Petitioner is confused by
AEDPA's one-year statute of limitations.  AEDPA places a one year statute of limitations on the
filing of petitions for writs of habeas corpus, which means that a district court is barred from
reviewing a habeas petition filed after this one year period.  <u>See</u> 28 U.S.C. § 2244(d).  In other
words, in general, petitions filed more than one year after the time for direct review has expired
are not considered by federal courts.  However, filing within the one-year limitation period does
not exempt a petition from AEDPA's substantive provisions.

1        (2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA"). See Ramirez v.
Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas
relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his
Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v.
Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and
therefore did not address the merits of petitioner's Eighth Amendment claim).  Courts are not
required to address the merits of a particular claim, but may simply deny a habeas application on
the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71
(overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth
Circuit required district courts to review state court decisions for error before determining
whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not
precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

        The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are
different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state
> court applies a rule different from the governing law set forth in our cases, or if it
> decides a case differently than we have done on a set of materially
> indistinguishable facts. The court may grant relief under the "unreasonable
> application" clause if the state court correctly identifies the governing legal
> principle from our decisions but unreasonably applies it to the facts of the
> particular case. The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively unreasonable, and we
> stressed in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389
> (2000)  that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law
set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to
cite or fails to indicate an awareness of federal law. See Early v. Packer, 537 U.S. 3, 8 (2002).

        The court will look to the last reasoned state court decision in determining whether

1  the law applied to a particular claim by the state courts was contrary to the law set forth in the

2  cases of the United States Supreme Court or whether an unreasonable application of such law has

3  occurred.  See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed, 538 U.S. 919

4  (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a

5  claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must

6  perform an independent review of the record to ascertain whether the state court decision was

7  objectively unreasonable.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003).  In other

8  words, the court assumes the state court applied the correct law, and analyzes whether the

9  decision of the state court was based on an objectively unreasonable application of that law.  It is

10  appropriate to look to lower federal court decisions to determine what law has been "clearly

11  established" by the Supreme Court and the reasonableness of a particular application of that law.

12  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.1999).

13  **III.    Arguments and Analysis**

14          Petitioner claims that his constitutional rights were violated because his conviction

15  was based on evidence obtained during a search that violated the Fourth Amendment.  More

16  specifically, he argues that the state court erred by denying his California Penal Code 1538.5

17  motion to suppress.   Respondents contend that federal habeas review is unavailable for

18  petitioner's Fourth Amendment claim because he had a full and fair opportunity to litigate this

19  claim in state court.

20          When "the State has provided an opportunity for full and fair litigation of a Fourth

21  Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground

22  that evidence obtained in an unconstitutional search or seizure was introduced at his trial.".  Stone

23  v. Powell, 428 U.S. 465, 489-90 (1976).  The relevant inquiry is whether petitioner had the

24  opportunity to litigate his Fourth Amendment claim in state court, not whether he did in fact do so

25  or even whether the claim was correctly decided.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891,

26  899 (9th Cir. 1996).  The Ninth Circuit has recognized that California Penal Code § 1538.5's

5

1   procedure provides the full and fair opportunity required by Stone; therefore, federal habeas relief

2   for search and seizure claims is unavailable.

3          The Ninth Circuit looks to factors set forth in Townsend v. Sain, 372 U.S. 293

4   (1963) to determine if a petitioner was afforded a full and fair hearing at the state level.  See

5   Mack v. Cupp, 564 F.2d 898, 900-02 (9th Cir. 1977).  Under Townsend, a state evidentiary

6   hearing is not full and fair if:

7          (1) the merits of the factual dispute were not resolved in the state hearing; (2) the
           state factual determination is not fairly supported by the record as a whole; (3) the
8          fact-finding procedure employed by the state court was not adequate to afford a
           full and fair hearing; (4) there is a substantial allegation of newly discovered
9          evidence; (5) the material facts were not adequately developed at the state-court
           hearing; or (6) for any reason it appears that the state trier of fact did not afford the
10         habeas applicant a full and fair fact hearing.

11  Townsend, 372 U.S. at 313.    Although the Ninth Circuit has afforded great weight to the

12  Townsend factors, these factors must not always be applied literally as the sole measure of

13  fullness and fairness.  Mack, 564 F.2d at 902 ("the Townsend guidelines, to the extent that they

14  command the actual use of state fact-finding procedures, surpass the requirement of Stone that the

15  state must have extended an opportunity for the full and fair consideration of fourth amendment

16  claims.")

17         In the instant case, the court cannot find that petitioner had met his burden of

18  establishing that the California state courts have refused to consider his Fourth Amendment

19  claims fully and fairly.  The record shows that petitioner filed a California Penal Code § 1538.5

20  motion challenging the initial sweep of the apartment and the subsequent search.  (CT 47-55.)

21  Petitioner, through his attorney, was afforded a full opportunity to orally argue this Fourth

22  Amendment motion.  (RT 48-134.)  After considering the party's written motions and hearing

23  oral argument, the court denied petitioner's motion to suppress the evidence obtained through the

24  initial sweep of the apartment and subsequent search pursuant to Ms. Duffy's probation.  (RT

25  134-135.)

26  ///

1    Petitioner presented his arguments regarding the evidence obtained in the search of

2  his bedroom to the California Court of Appeals.  The opinion of the Court of Appeals indicates

3  that the Court fully considered and squarely rejected his claims.  (People v. Salas, C039240,

4  Lodged Docs.)  Petitioner asserts that the state court's recitation of the facts was incorrect—the

5  bail bondsman did not testify that he chased petitioner into the apartment, but instead stated that

6  he watched petitioner enter the apartment.  Even assuming arguendo that petitioner's version is

7  correct, this does not establish that petitioner's claims were not fully and fairly considered.

8  Indeed, how petitioner entered the apartment is not as important as that he entered it with a bulge

9  in his waistband, indicating that he was potentially armed.

10    The court finds that petitioner has failed to establish that his Fourth Amendment

11  claims were not fully and fairly considered in state court.  Accordingly, his claim for federal

12  habeas relief may not be granted.

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

**IV.**     <u>Conclusion</u>

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>See</u>  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   July 12, 2007.


**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE